UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **LUV N' CARE, LTD** | * | **CIVIL ACTION NO.  15-2349** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **GROUPO RIMAR, AKA SUAVINEX** | * | **MAG. JUDGE KAREN L. HAYES** |

<u>REPORT AND RECOMMENDATION</u>

Before the Court is a Motion to Dismiss, or in the Alternative, Motion for Judgment on the Pleadings [doc. # 4] filed by the defendant Groupo Rimar a/k/a Suavinex SA ("Suavinex"), seeking dismissal of the plaintiff's complaint pursuant to Rule 12(b) and 12(c) of the Federal Rule of Civil Procedure. For reasons assigned below, it is recommended that the motion be **GRANTED**.

<u>Background</u>

Luv N' Care, Ltd. ("LNC") filed the instant complaint against Suavinex on August 9, 2015. (Complaint [doc. # 1]). LNC alleges that, effective January 1, 2009, it contracted with Suavinex for the latter company to act as the exclusive distributor for LNC's products in Spain. (Compl., Exh. A; "2009 Agreement" [doc. # 1-2]). The 2009 Agreement included provisions protecting intellectual property rights and ensuring confidentiality. *Id*. Effective April 12, 2012, however, LNC and Suavinex confected a Termination Agreement and Mutual Release ("2012 Agreement") that recognized the expiration of the 2009 Agreement, and settled a dispute regarding the payment of outstanding commission and invoices. (Compl. [doc. # 1]). The 2012 Agreement also preserved certain provisions of the 2009 Agreement regarding intellectual

property rights, termination of trademark rights, and use of confidential information that form the basis for this suit. *Id*.[1]

---

[1] Specifically, paragraphs 15, 16, and 19 of the 2009 Agreement survived termination. [doc. # 1-2]. They provide that

> 15. A. Distributor hereby acknowledges that the Trademarks that are or become subject to this Agreement, and any combinations thereof are good and valid between the parties and that Distributer will not challenge their validity or ownership during the term of this Agreement or thereafter. Distributor further acknowledges and hereby agrees that LNC has the exclusive rights in the Territory to the use of the Trademarks, trade names and brand names (including but not limited to, LNC's rights in connection with advertising materials, copyrighted packaging and/or other related materials associated with the Products), and that Distributor has no right or interest therein or in any other trademark, trade name, or brand name of LNC and/or Nuby or its Licensors. Furthermore, Distributor acknowledges that LNC and Nuby under a Trademark License Agreement (a license agreement with Admar Internatinoal Inc., and/or N.E. Hakim for certain Nuby Trademarks) has licensed those certain Trademarks in Exhibit 1 for use within the Territory. Distributor will not in any way infringe or contribute to the infringement by others of the right of LNC and or Nuby in said Trademarks, trade names and brand name, but will immediately notify LNC upon suspecting or learning of such infringement by others in the Territory. Distributor will only use the Trademarks in a manner approved by LNC. LNC shall be responsible for protection and maintenance of the Trademarks. Distributor may use its own trademarks at its discretion on all non-LNC or Nuby Products.
>
> B. Distributor [Suavinex] hereby acknowledges and agrees not to copy or utilize any of LNC's formulae, trade secrets, product design, patents, drawings, business plans, prototypes, packaging, procedures and methods any [sic] other proprietary designs or information without LNC's written permission.
>
> C. If in the event, the Distributor is found to have copied any Intellectual Property Rights, Product Designs and/or Packaging as defined in Paragraph 15 A & B above, then the Distributor will be liable to pay to LNC, at a minimum, a royalty of twelve (12)

LNC filed a previous action against Suavinex on June 14, 2015, asserting a breach of contract claim based on paragraphs 15 and 19 of the 2009 Agreement. *See Luv N' Care, Ltd. V. Groupo Rimar, AKA Suvainex*, 3:14-cv-02491 (W.D. La.) (*Suavinex I*). On May 15, 2015, LNC

> percent on all sales of the infringing product(s) as well as any other remedies allowed by law for LNC to recover its losses and lost sales.
>
> \* \* \*
>
> 16. Upon termination of this Agreement, all rights of distributor to the Trademarks, trade names, drawings and designs of LNC, Product configuration, proprietary designs, proprietary information and brand names shall immediately cease and terminate, and Distributor shall have no further rights thereto and shall make no claim thereto or against the use thereof in the Territory by LNC and/or Nûby or against the use by other duly authorized distributors or agents of LNC or other owners of the Trademarks. All advertising materials, confidential information, and related documents and materials shall be destroyed by Distributor within ninety (90) days of notice of termination.
>
> \* \* \*
>
> 19. During the term of this Agreement and continuing after the expiration or termination hereof, either party shall not disclose or make accessible to anyone, or make use of the knowledge or information which either party obtains or obtained during the term of this Agreement with respect to formulae, trade secrets, product design, patents, drawings, business plans, prototypes, procedures, and methods any [sic] other proprietary designs or information of the other party without the written consent of the other party . . . During the term of this Agreement and continuing after the expiration or termination hereof, Distributor agrees not to use in any fashion said information or designs, or any colorable imitations thereof. Any use by Distributor of said information or property without LNC's written consent will convey royalty and commission rights upon LNC at a rate not less than those set herein, without waiving and specifically reserving to LNC any other remedies available to LNC . . .

(2009 Agreement, ¶¶ 15(A)-(C), 16, 19 [doc. # 1-2]).

sought to amend its complaint to assert an additional breach of contract claim based on Suvainex's alleged unauthorized use of the term "comfort." (*Suavinex I* [doc. # 35]). The Court denied Suavinex's attempt to file a second amended complaint as untimely on June 17, 2015. (*Suavinex I* [doc. # 54]). Further, the court found that the proposed amendment failed to state a claim for breach of paragraphs 15 & 19 of the 2009 Agreement stemming from Suavinex's use of the term, "comfort." *Id.* at 7. On September 30, 2015, the court granted Suavinex's motion for summary judgment, finding that Suavinex did not breach the 2009 Agreement or the 2012 Termination Agreement. (*Suavinex I* [doc. # 127]). The judgment was finalized on December 28, 2015. (*Suavinex I* [doc. # 161]).

On February 2, 2016, defendant Suavinex filed the instant motion to dismiss or, in the alternative, motion for judgment on the pleadings. [doc. # 4]. Suavinex noted the dismissal of LNC's claims in *Suavinex I*, and urged dismissal of the instant suit because plaintiff's complaint: (1) fails to state a claim upon which relief may be granted; (2) Suavinex has not breached the 2009 Agreement or the 2012 Termination Agreement; (3) LNC insufficiently served Suavinex with the Complaint; (4) and LNC's cause of action is barred on the grounds of res judicata. *Id.* LNC opposed the motion [doc. # 11] and Suavinex was granted leave to file a late reply. [doc. # 12]. Thus, the matter is ripe.

## Standard of Review

Defendant seeks dismissal of plaintiff's claims under Rules 12(b)(5) for sufficiency of service, 12(b)(6) failure to state a claim and 12(c) judgment on the pleadings. [doc. # 4].

### I. 12(b)(5) Standard

A motion to dismiss pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure

4

challenges the mode of delivery or lack of delivery of the summons and complaint. A 12(b)(5) motion turns on the legal sufficiency of the service of process. Once the validity of service of process has been contested, the plaintiff bears the burden of establishing its validity. *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992); *Holly v. Metro. Transit Authority*, 213 Fed. Appx. 343, 343 (5th Cir. 2007) ("The party making service has the burden of demonstrating its validity when an objection to service is made."). A district court has broad discretion to dismiss an action pursuant to Rule 12(b)(5) for insufficient service of process. *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994).

**II. 12(b)(6) Standard**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal*, 556 U.S. at 678. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 555-56. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal,* 556

5

U.S. at 678. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153-54 (5th Cir. 2010). A court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly,* 550 U.S. at 556. Furthermore, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Bell Atl.*, 550 U.S. at 555). The complaint need not even "correctly specify the legal theory" giving rise to the claim for relief. *Gilbert*, 295 Fed. Appx. 713.[2] Even if a plaintiff fails to oppose a 12(b)(6) motion, the court still is obliged to assess the legal sufficiency of the complaint. *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) (citations omitted).

---

[2] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007) (citation omitted). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citations and internal quotation marks omitted).

### III. 12(c) Standard

Rule 12(c) motions are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (*citing Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)) and *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id.; Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (*citing Hughes*, 278 F.3d at 420).

The standard for judgment on the pleadings under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). *Doe*, 528 F.3d at 418. This Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Great Plains Trust Co.*, 313 F.3d at 312–313 (*citing Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). A plaintiff must plead "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

## Analysis

### I. Res Judicata

The doctrine of res judicata, or claim preclusion, forecloses re-litigation of claims that were, or could have been, litigated in a prior action. *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Four elements must be met for a claim to be barred by res judicata: (1) the parties in both the prior suit and current suit must be identical; (2) a court of competent jurisdiction must have rendered the prior judgment; (3) the prior judgment must have been final and on the merits; and (4) the plaintiff must raise the same cause of action in both suits. *Howe v. Vaughan*, 913 F.2d 1138, 1143-44 (5th Cir. 1990).

Plaintiff raised the same cause of action against the same defendant in this court in the matter entitled *Luv N' Care, Ltd. V. Groupo Rimar, AKA Suvainex*, 3:14-cv-02491 (W.D. La.) [*Suavinex I*]. On September 30, 2015, this court granted Suavinex's motion for partial summary judgment, which found that Suavinex did not breach the 2012 Termination Agreement. [*Suavinex I*, doc. # 127]. On December 28, 2015, the judgment was finalized and on January 14, 2016, plaintiff filed a notice of appeal to the United States Court of Appeals for the Fifth Circuit. [*Suavinex I*, docs. # 161; # 162].[3]

The undersigned notes that the Fifth Circuit Court of Appeals has held that partial

---

[3] *Suavinex I* remains on appeal. However, res judicata attaches even though an appeal has been taken and remains undecided. *See Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467 (5th Cir. 2013) (and cases cited therein).

summary judgment orders generally lack the finality necessary for preclusion. *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269-72 (5th Cir. 1986). However, in *Royal Ins. Co. v. Quinn–L Capital Corp.*, the court, while recognizing the general rule that "orders of partial summary judgment, standing by themselves, have no preclusive effect, as they are interlocutory[,]" held that the summary judgment order at issue was entitled to preclusive effect because "the 'partial' summary judgment was 'partial' in name only. It decided the major issues in the case and entry of the final judgment was a mere formality." 960 F.2d 1286, 1295 n. 11 (5th Cir. 1992); *Avondale Shipyards*, 786 F.2d at 1272. Here, the September 30, 2015, order granting Suavinex's motion for partial summary judgment decided the major issues of the case, i.e., that Suavinex did not breach the 2012 Termination Agreement, and is now final. [doc. # 161].

> LNC contends that
>
> [s]ince the attempt by Plaintiff to amend the Complaint in the original lawsuit against [Suavinex], (First Filing) by Plaintiff to include a claim for unauthorized use of one of Plaintiff's trademark, namely, 'Comfort' and/or 'Confort,' was not allowed, and since the original complaint filed in the First Filing did not allege or mention a violation of Paragraph 16 which deals with trademarks, there has been no holding by this Honorable Court that said Paragraph 16 and the terms of said Paragraph would not be upheld, so the claim of *Res Judicata* must fail."

[doc # 11, p. 2] (emphasis removed).

To determine whether the prior and current suits involve the same cause of action, the Court applies a "transactional" test. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004). "Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Id. (quoting Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004) (*quoting* the *Restatement (Second) of Judgments* §

9

24(1) (1982))). "What grouping of facts constitutes a 'transaction' or a 'series of transactions' must 'be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Davis*, 383 F.3d at 313. Black's Law Dictionary defines "transaction" as, inter alia, "[t]he act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract." Black's Law Dictionary (10th ed. 2014).

The critical issue under the transactional test is whether the two actions are based on the "same nucleus of operative facts." *Id.* (*quoting Petro–Hunt* at 396). Accordingly, "the critical issue is not the relief requested or the theory asserted but whether [the] plaintiff bases the two actions on the same nucleus of operative facts." *Matter of Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990). "A party may not avoid the preclusive affect of res judicata by asserting a new theory or a different remedy. The nucleus of facts defines the claim rather than the legal theory posed or recovery sought." *Id.* at fn. 10 (*citing Robinson v. National Cash Register Co.*, 808 F.2d 1119, 1124–25 (5th Cir. 1987)). Thus, this Court must review the facts contained in each complaint to determine whether they are part of the same transaction or series of transactions, arising from the same nucleus of operative facts.

After review, it is clear that LNC's previous lawsuit and the instant lawsuit are based on the same nucleus of operative facts. Plaintiff contends that its new filing is based on a breach of paragraph 16 of the agreement, rather than a breach of paragraphs 15 and 19. However, the present case merely presents new theories based on an alleged breach of the same 2009

Agreement and 2012 Termination Agreement.[4] Where two cases are based on the same nucleus of operative facts, "the prior judgment's preclusive effect extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" Plaintiff's claims originate from the same contract based on identical facts.

Even if the two actions are the same under the transactional test, res judicata does not bar the instant action unless LNC "could and should have brought [its breach of paragraph 16] claims in the former proceeding." *Howe*, 913 F.2d at 1145; *D–1 Enterprises, Inc. v. Commercial State Bank*, 864 F.2d 36, 38 (5th Cir. 1989) ("Essential to the application of the doctrine of res judicata is the principle that the previously unlitigated claim could or should have been brought in the earlier litigation."). Plaintiff could have brought its claims based on an alleged breach of paragraph 16 of the 2009 Agreement, but did not attempt to do so until a motion to amend its pleadings on May 15, 2015 – 56 days after the deadline to amend pleadings. [doc. # 54, p. 4].

Thus, LNC was presented with an opportunity to avoid preclusion and preserve LNC's additional breach of contract claim; however, the amended complaint was untimely. Where the plaintiff's action, such as tardiness, results in the plaintiff being unable to pursue its claim in the original action, res judicata precludes the successive action. *Nilsen v. City of Moss Point*, 701 F.2d 556, 563 (5th Cir. 1983) ("[T]heories which were the subject of an untimely motion to amend, filed in the earlier action, 'could have been brought' there."); *see also Jackson v. F.I.E. Corp.*, 302 F.3d 515, 529 (5th Cir. 2002) (res judicata protects "private and public values" such

---

[4] "[A] contract is generally considered to be a single transaction for purposes of claim preclusion." *Brennan's, Inc. v. Brennan*, 377 F. Supp. 2d 579, 584 (E.D. La.) *aff'd*, 150 F. App'x 365 (5th Cir. 2005) (*quoting* 18 *Moore's Federal Practice* § 131.23[1], at 131–61).

as "repose, finality, and efficiency").

The instant complaint involves the same parties and raises identical claims to those in the previous suit. Therefore, plaintiff's claims against the defendant Suavinex should be dismissed on the basis of res judicata. *Bailey v. Johnson*, 846 F.2d 1019 (5th Cir. 1988) (affirming dismissal of case as duplicative and frivolous where the same factual allegations were asserted).

**II. Service of Process**

Federal Rule of Civil Procedure 4(f)(1) permits service "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." The United States and Spain are parties to the Hague Convention. *Carrascosa v. McGuire*, 520 F.3d 249, 259 n. 24 (3rd Cir. 2008). The Hague Convention is a multinational treaty, formed for the purpose of creating an "appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time," thereby simplifying and expediting international service of process. *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 383 (5th Cir. 2002). As a ratified treaty, compliance with the Hague Convention is mandatory in all cases to which it applies. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988).

Article 5 of the Hague Service Convention provides that each nation shall designate a Central Authority to receive service of process for parties within its borders. 20 U.S.T. 362, Art. 5. Article 5 of the Hague Service Convention further provides that, ". . . the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed." *Id.* Defendant contends that Article 144 of the Spanish Procedural Law requires that all documents drafted in a foreign language must be accompanied

by a translation into Spanish. [doc. # 4-1, p. 16]. Defendant further alleges that LNC failed to provide Suavinex with a "full and complete translation of the Complaint, which by its very terms includes the 2012 Termination Agreement. . . ." *Id.*

Since Suavinex has contested the validity of service of process, LNC bears the burden of establishing its validity. *Carimi*, 959 F.2d at 1346. Plaintiff argues that "it instructed the service company to translate all that it sent it," and that the translation should not be required because the 2012 Termination Agreement was prepared in English. Plaintiff however has not provided the court with any evidence of how the service was effectuated or if it complied with the requirements under the Hague Convention. For instance, if the Plaintiff had provided the court with the Spanish Central Authority's return of a completed certificate of service, it would be prima facie evidence that the Authority's service on Suavinex was made in compliance with Spanish law.[5] However, in the absence of any such evidence, Plaintiff has failed to establish the validity of service on Suavinex, and dismissal on this ground is appropriate.

### III.     Motion to Dismiss under Rule 12(c)

Plaintiff claims that Defendant Suavinex improperly used a trademark of LNC, the word "comfort" and/or "confort," in violation of the 2009 Agreement and the 2012 Termination Agreement. [doc. # 1, p. 2-3]. Defendant Suavinex contends that the only trademarks implicated

---

[5] Under the Hague Convention, the completed Certificate is prima facie evidence that service was in compliance with the Convention. *Northrup King v. Compania Productora Semillas Algodoneras Selectas*, 51 F.3d 1383, 1389 (8th Cir. 1995). Had the service been inadequate in any material respect, the Central Authority undoubtedly would have complied with its duty to "promptly inform the applicant and specify its objections to the request." *Id.*; *see also* Hague Convention, arts. 2–6. "By not objecting to the documents and by certifying service the Central Authority indicated that the documents complied with the Convention . . . ." *Northup King Co.*, 51 F.3d at 1389. However, here, Plaintiff does not provide any evidence that service was in compliance with the Hague Convention.

by the 2009 Agreement are the terms found in the attached Exhibit 1, which does not contain the term "comfort" and/or "confort." [doc. # 4-1, p. 6].

The Agreement specifies that Louisiana law governs. [doc. # 1-2, p. 7]. "The essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So.3d 1099, 1108–09. (La. Ct. App. 2011). "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code Art. 2045; *see also Prejean v. Guillory*, 38 So.3d 274, 279 (La. 2010). To determine intent, courts first look to a contract's language. *See Prejean*, 38 So.3d at 279. Indeed, so long as the "words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. The meaning and intent of the parties to a written instrument is ordinarily determined from the four corners of the instrument and extrinsic or parole evidence is not admissible either to explain or to contradict the terms of the instrument. *See Brown v. Drillers, Inc.*, 630 So.2d 741 (La. 1994).

"When the words of a contract are clear and unambiguous and lead to no absurd consequences, the Court will discern the contract's meaning and the parties intent within the four corners of the document." *Pellerin Const., Inc. v. Witco Corp.*, 169 F.Supp.2d 568, 578 (E.D. La. 2001) (citing La. Civ. Code arts. 1848, 2046). "The words of a contract must be given their generally prevailing meaning." La. Civ. Code. art. 2047. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050.

After reviewing the 2009 Agreement and applying the foregoing principles of contract

interpretation, the court concludes that Suavinex did not breach paragraph 16 of the 2009 Agreement. Paragraph 16 provides:

> 16. Upon termination of this Agreement, all rights of distributor to the Trademarks, trade names, drawings and designs of LNC, Product configuration, proprietary designs, proprietary information and brand names shall immediately cease and terminate, and Distributor shall have no further rights thereto and shall make no claim thereto or against the use thereof in the Territory by LNC and/or Nûby or against the use by other duly authorized distributors or agents of LNC or other owners of the Trademarks. All advertising materials, confidential information, and related documents and materials shall be destroyed by Distributor within ninety (90) days of notice of termination.

LNC contends that by using its trademark, "comfort," Suavinex contractually breached paragraph 16 of the 2009 Agreement, as incorporated into the 2012 Agreement. [doc. # 1, p. 3]. In its opposition, however, Suavinex notes that the term "Trademarks" is capitalized twice in the paragraph unlike other terms such as "trade names, drawings and designs of LNC and proprietary designs." [doc. # 4-1, p. 11]. Defendant argues that "Trademarks" refers to a specific set of LNC-held or licensed trademarks found in Exhibit 1 of the 2009 Agreement. *Id.*; [doc. # 1-2, p. 14]. Exhibit 1 contains a list of LNC trademarks, but does not include "comfort" or "confort." *Id.* Plaintiff disputes that "Trademark" should be solely interpreted to only refer to those listed in Exhibit 1 of the 2009 Agreement. Plaintiff states that Trademark and trademark are not capitonyms,[6] which would change the meaning of the word when capitalized. [doc. # 11, p. 3]. Further, "Trademark" is not a defined term in the 2009 Agreement. *Id.*

---

[6] "When a word, that is capitalized, changes its meaning from its un-capitalized counterpart it is called a capitonym; i.e. China (a country) and china (a form of porcelain dishware) . . . ." [doc. # 11, p. 3].

The court notes that throughout the 2009 Agreement, the word trademark is capitalized when referring to the Exhibit 1 list of LNC trademarks. As cited by Plaintiff, paragraph 3 of the 2009 Agreement states:

> Distributor shall use its best efforts to maximize the distribution and sale of Products, throughout the territory, and to promote the image of quality and value of Products sold under the LNC and Nuby **trademarks or those Trademarks listed in Exhibit 1**. . . .

[doc. # 1-2, p. 1]. Plaintiff directs the court's attention to the words "trademarks" and "Trademarks" as evidence that the contract is not limited to Trademarks listed in Exhibit 1. [doc. # 11, p. 3]. The court notes however, that the use of "trademark" and "Trademarks" in the same sentence supports the reading that the two terms are afforded different meanings, i.e., when trademark is capitalized it refers to Trademarks contained in Exhibit 1. Thus, the court finds that paragraph 16 references the "Trademarks" listed in Exhibit 1. Additionally, this court interpreted "Trademarks" in the same way in reference to a similar paragraph of the 2009 Agreement in the previous litigation between these parties. *See* (*Suavinex I* [doc. # 54, p. 6-7]). Accordingly, the court finds that the complaint fails to state a claim for breach of contract stemming from Suavinex's use of the term, "comfort," and that defendant's motion to dismiss should be **GRANTED** on this basis as well.

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motion to dismiss pursuant to FED. R. CIV. P. Rules 12(b) and 12(c) filed by defendant Suavinex [doc. # 4] be **GRANTED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FED. R. CIV. P. 72(b), the

parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 26th day of February, 2016.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE